ION Z. JOSAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Josan v. Commissioner
Docket No. 7629-72.
United States Tax Court
T.C. Memo 1974-144; 1974 Tax Ct. Memo LEXIS 175; 33 T.C.M. (CCH) 645; T.C.M. (RIA) 74144; June 6, 1974, Filed. Ion Z. Josan, pro se. Harry Hoskins, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1970 in the amount of $1,089.69. The issues for decision are: (1) Whether petitioner is entitled to dependency exemptions for his parents, a brother and a sister, who were neither citizens nor residents of the United States during 1970. (2) The amount of deduction to which petitioner is entitled for medical expenses, casualty losses, uniforms, union dues, tool costs, and other business expenses. (3) Whether petitioner is entitled to deduct an amount paid as a legal fee to an attorney who represented him and his wife in connection with the *177 arrest of his wife, allegedly for shop lifting. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly.
Petitioner is an individual who resided in Long Island, New York at the time of the filing of his petition in this case. He filed an individual income tax return for the calendar year 1970 with the district director of internal revenue, Brooklyn District, New York. Petitioner was married during the year 1970 and was married at the end of that year. His wife filed a separate income tax return claiming itemized deductions. During the year 1970 petitioner was employed by the Port Authority Trans Hudson Corporation as an electrical helper, by the John T. Lynch Company as a guard, and by the Stella D'Oro Biscuit Co., Inc., as a mechanic. Petitioner was born and lived until he came to live in the United States in the part of Romania which, at least during a part of the time he lived there, was under Russian control. When he came to the United States a little over a year before the beginning of the calendar year 1970, he was unable to speak the English language. At the time of the trial of this case he still had difficulty with certain expressions *178 in the English language. During the entire year 1970 petitioner's mother, father, and younger brother and sister resided in Romania. None of these relatives of petitioner had ever resided in the United States and they were not in 1970 and had never been citizens of the United States. All four of them had never resided outside of Romania. During the year 1970 petitioner sent money to his mother, father, brother, and sister in Romania, usually by getting a friend or acquaintance who was going to Romania to take the money to his parents for him. He also sent by parcel post parcels of food and clothes to his family in Romania. During the year 1970 petitioner spent $70.59 for drugs and medicines for himself and his wife and spent $500 for doctors' and dentists' bills for himself and his wife. These amounts are exclusive of amounts which petitioner's wife paid for drugs and medical expenses and claimed as a deduction on her income tax return. During the year 1970 while petitioner was working at the Port Authority Trans Hudson Corporation he was required to furnish certain tools in his work and was supplied with a locker in which to keep these tools and other belongings. In *179 March 1970 petitioner left the employ of the Trans Hudson Corporation and shortly after ceasing to be employed there, went there to obtain items from his locker. He found that his locker had been broken into and the tools he had in the locker, as well as a pair of work boots and a work jacket which he used only in his work, had been taken. He reported this theft to the Port Authority Police. The tools petitioner had in the locker had cost him $103 and they were relatively new, having been purchased only a few months before his locker was broken into. Petitioner also had in the locker a pair of boots for which he had paid $20 and a jacket for which he had paid $50, both of the items having been worn by him for approximately 2 to 3 months. The fair market value of the tools and clothing which were taken from petitioner's locker at the Port Authority Trans Hudson Corporation at the time these items were stolen was $125. In September 1970 a fire occurred in the kitchen of the apartment in which petitioner and his wife were living. The fire was caused by food being left burning on the kitchen stove. The Fire Department was called, and the firemen extinguished the fire. The firemen *180 listed the cause of the fire on their report as "cooking carelessness," and they listed as the owner of the building a person other than petitioner. The fire in the kitchen created smoke that went throughout the apartment. As a result of the fire there was smoke damage to the paint in the kitchen and bedroom of the apartment and smoke damage to the wallpaper in the eating part of the kitchen area. There was also smoke damage to the rugs in the living room, bedroom, and one other room of the apartment and to drapes and curtains in the apartment. There had been no repainting or repapering in the apartment for at least 3 years. After the fire petitioner cleaned the paint himself and hired someone to paint the kitchen and bedroom and to replace the kitchen wallpaper at a total cost of approximately $250. Petitioner's wife attempted to clean the drapes and curtains. Certain of the curtains and drapes could not be cleaned and petitioner replaced these drapes and curtains at a cost of approximately $120. Petitioner also had all of the rugs in the apartment removed and cleaned. The rugs had not previously been cleaned other than by vacuum, for approximately 2 years prior to the date of *181 the fire. Petitioner sustained a loss by smoke damage from the fire, measured on the basis of the fair market value before and after the fire of the items damaged, of $250. During 1970 petitioner paid union dues of $163. He purchased work clothing including boots and coveralls which were not adaptable to wearing other than for the purpose of work at a cost of approximately $34. When petitioner went to work for the Stella D'Oro Biscuit Company as a mechanic he was required to supply certain tools for his use there. He purchased tools at a cost of approximately $125 for use in his work at the Stella D'Oro Biscuit Company. Approximately $25 was paid for the type of tools which would have a useful life of approximately 1 year and $100 for the type of tools that would have a normal useful life of approximately 5 years. During the year 1970 petitioner at times would work a 12-hour day. He would pay his own transportation from his home to his place of employment and from his place of employment to his home, and he purchased his own lunches. During 1970 petitioner's wife was charged with shoplifting. Petitioner paid a lawyer $250 to defend his wife. The charge was dismissed. *182 Petitioner on his Federal income tax return for the year 1970 itemized his deductions. He claimed total itemized deductions of $3,806.89 consisting of the following: Total medical expenses of $994.33 reduced by 3 percent of adjusted gross income
$ 727.79
Taxes
488.60
Contributions
70.00
Interest expense
448.50
Fire loss
350.00
Theft loss
225.00
Uniform and union dues
297.00
Lawyer fees
450.00
Tools 750.00 [1]
$3,806.89
In addition to his own personal exemption, petitioner claimed exemptions for four dependents, claiming a total amount of $2,400 for these dependency exemptions. Respondent in his notice of deficiency disallowed in full petitioner's claimed interest deduction, but the parties have agreed that petitioner is entitled to deduct $22.24, and the balance of this deduction was properly disallowed. Respondent disallowed all of the claimed medical and dental expenses except $23.24, and disallowed *183 all of the claimed deductions for theft loss, tools, fire loss, uniform and union dues, and legal fees. At the trial respondent conceded certain items of union dues and medical expenses were properly deductible and we have incorporated respondent's concessions, as well as the testimony of petitioner, in arriving at the amounts we have found for these items. OPINION Section 152(e), I.R.C. 1954, [1] provides for a dependency exemption for a taxpayer for each dependent as defined in section 152, if the conditions otherwise stated in that section are met. Section 152(a) provides that the dependency exemption is allowed for a father or mother, a brother or sister of a taxpayer over half of whose support for the calendar year was furnished by the taxpayer. However section 152(b) which states the rules relating to the definition of dependents provides in sub-paragraph (3) as follows: The term "dependent" does not include any individual who is not a citizen or national of the United States unless such individual is a resident of the United States, of a country contiguous to the United States, of the Canal Zone, or of the Republic of Panama. * * * Since the evidence here is clear *184 that petitioner's father, mother, brother and sister are excluded from the definition of dependents as contained in section 152 because they were neither residents, nationals, nor citizens of the United States during the year 1970, we need not determine whether petitioner has shown that he supplied over half of the support of his parents, brother and sister and they did not have income themselves in an amount to cause petitioner not to be entitled to the exemption under section 151(e). We therefore hold that respondent properly disallowed petitioner's claimed dependency exemptions for his mother, father, brother, and sister. The evidence clearly shows that petitioner did suffer a theft loss in March 1970 when his locker at the Port Authority Trans Hudson Corporation was broken into. The amount of the theft loss is not so clearly shown. However on the basis of the evidence presented, including the testimony as to the cost of the items stolen and how long they had been used, we have concluded that the cost to petitioner of the items stolen was $173. Section 165(c) provides that in the case of an individual, a deduction *185 for losses sustained during the taxable year and not compensated for by insurance or otherwise shall be limited to losses incurred in a trade or business or in a transaction entered into for profit, though not connected with a trade or business, and losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. In connection with casualty losses not connected with a trade or business, the amount allowed is only the amount of such loss which exceeds $100 from each casualty. Although petitioner claimed the theft loss of his tools, jacket, and boots as a casualty loss, apparently since these were items used by petitioner in his work, he might have claimed them as a loss incurred in connection with his trade or business of being an electrical helper. Viewed in this manner, petitioner would be entitled under section 1.165-7(b) (1), Income Tax Regs., to deduct, in computing the loss, the amount of the adjusted basis of the items if that is greater than their fair market value immediately before the theft since the were totally destroyed by the theft. The cost of the items less any previous deductions taken in *186 connection therewith including any depreciation deduction would be the basis of the items. There is some conflict in the record as to whether petitioner had claimed a deduction for the tools, boots, and jacket which he lost by theft. However, in our view the record justifies the conclusion that in the items we have concluded were stolen from petitioner there is no duplication of deduction. We therefore hold that petitioner is entitled to deduct his full $173 cost of the items which he lost by theft at the Port Authority. The fire in petitioner's home occasioned a casualty loss of property not connected with petitioner's trade or business. Since apparently petitioner rented the apartment, it is not completely clear that the damage to the walls and wallpaper was damage to his own property. However, the record is clear that he did, at his own expense, have the walls painted and repapered. The testimony is somewhat confusing as to the cost of this work and is even more confusing as to the extent to which this work improved the apartment in which petitioner was living over its condition prior to the painting being done. Section 1.165-7(a) (2) (ii), Income Tax Regs., permits cost *187 of repairs to be used as evidence of value only where the repairs merely restore the property to its condition before the casualty but do not improve it. The curtains and rugs which were damaged were petitioner's property. The cost of the curtains which were damaged and the cleaning of the rugs are reasonably clear in the record although there is conflict in the testimony between petitioner and his wife as to the amount of these costs. In this state of the record we have used our best judgment of the difference in the fair market value before and after the fire in determining the fair market value before and after the fire of the rugs, the fair market value of the curtains and drapes which were completely destroyed, and the extent of petitioner's loss in connection with the painting and wallpapering, and have concluded that petitioner sustained a casualty loss in connection with the fire in the amount of $250 and is entitled to a deduction of $150 of this amount as a casualty loss to property not connected with his trade or business. The record is confusing as to the cost of uniforms which petitioner was required to furnish for his work and did not use for other purposes. However, *188 using our best judgment from the record, we have determined that petitioner is entitled to a deduction for this item of $34. The record is clear that petitioner paid union dues totaling $163. He was required to pay $100 in joining the union and $7 a month for 9 months as a member of the Machinists Union during the year 1970. The record is very confusing as to the cost of tools petitioner purchased for his work as distinguished from certain tools he purchased for personal use in his home. Again, doing the best we can on the basis of an inadequate record, we have determined that the cost of tools used by petitioner in connection with his work was $125. Of this amount $25 is deductible as being paid for tools that have a useful life of a year or around a year. The balance of the $100 was paid for tools which have a useful life of approximately 5 years. We therefore hold petitioner is entitled to deduct $25 as a business expense for tools and $20 for depreciation on tools he purchased for use in his work. Petitioner is not entitled to deduct his commuting costs to and from work or the cost of his lunches at work. Petitioner has offered no explanation of why he considers these *189 personal expenses deductible and the record affords no basis for an allowance of a deduction for these items. The record is clear that the arrest of petitioner's wife, allegedly for shoplifting, had no connection with her work or with petitioner's work. The record shows that the outcome was that the case against petitioner's wife was dismissed. Apparently, though it is not clear in the record, some charge was brought against petitioner with respect to interfering with her arrest and apparently this charge was also dismissed. Since petitioner paid the $250 legal fee in connection with a purely personal matter, the amount of the fee is not deductible. Petitioner at the trial argued that he should be entitled to deduct the legal fee since even though there was no connection with his work nor with his wife's work of the charge that caused him to pay the fee, if the proper defense had not been made and he had to go to jail, he would not have been able to work and earn a living. Such a remote connection is not sufficient to cause an item to be a business expense as distinguished from a personal expense which is not deductible. Section 262 specifically provides that, except as otherwise *190 expressly provided in the Code, no deduction shall be allowed for personal living or family expenses. The $250 fee paid by petitioner to a lawyer is a personal expense just as was the claimed commuting cost and lunch expense which we have held not to be allowable to petitioner as a deduction. The petitioner has not shown the payment of any lawyer's fees in 1970 other than the $250 which we conclude is not deductible. Decision will be entered under Rule 155. Footnotes
1. The record is not clear whether any of these items included the $25 fee petitioner paid in 1970 to have his 1969 income tax return prepared. Clearly this $25 is deductible and this adjustment can be handled in the Rule 155 computation. ↩
1. All references are to the Internal Revenue Code of 1954. ↩